# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **DIRECTV, LLC,** | ) | **CASE NO**. **5:14 CV 2657** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **JUDGE JOHN R. ADAMS** |
| | ) | |
| **JOHN S. KUHN, et al.,** | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **Defendants.** | ) | (Resolving Doc. #21) |

This matter is before the Court on Plaintiff, DirecTV, LLC's ("DirecTV"), motion for summary judgment as to liability under 47 U.S.C. § 605 (Count 1). For the reasons that follow, DirecTV's motion (Doc. #21) is GRANTED.

**I.    FACTS**

Defendant John S. Kuhn ("Kuhn") is a licensed attorney who owns and operates Defendant Sadie Rene, Inc., doing business as "Sadie Rene's," collectively "Defendants." Sadie Rene's is located at 7200 Whipple Ave., NW, North Canton, OH 44720. Plaintiff DirecTV is a direct broadcast satellite service that provides a variety of programming including sports and other special interest content. DirecTV offers different service contracts to residential and commercial customers with different rates. Although the service contracts are different, the physical equipment used to receive DirecTV's broadcast signal is functionally interchangeable and can receive a signal at a residential or commercial location. DirecTV is aware that individuals will move residential equipment to commercial locations in an attempt to avoid paying the higher price of a commercial service contract. In an attempt to prevent individuals

from exploiting residential contracts in commercial locations, DirecTV sends observers to businesses who broadcast satellite content.

DirecTV has placed the residential service agreement governing Mr. Kuhn's residential account in the record; the agreement provides at part 1, subsection (h):

> We provide Service only for your private non-commercial use, enjoyment and home viewing. The programming may not be viewed in areas open to the public or in commercial establishments.

The agreement further provides, at part 10, subsection (d):

> This Agreement and any lease, activation, programming, or other service commitment agreement that you entered into in connection with obtaining Service or Receiving Equipment constitute our entire agreement. No salesperson or other representative is authorized to change it.

(Motion to Dismiss, Doc. #18-2, p. 11.) Defendants do not dispute that this service agreement governed Mr. Kuhn's DirecTV account.

DirecTV alleges, and Defendants admit, that they moved DirecTV equipment from Mr. Kuhn's home, where he had a residential contract, to his business, Sadie Rene's, where he did not have a commercial service agreement, and proceeded to broadcast DirecTV satellite programming, in violation of his residential agreement, without paying the commercial rate. (Amended Answer, Doc. # 15; Affidavit of John S. Kuhn, Doc. # 24-1.) DirecTV created a record of one such broadcast by sending a representative, Kwasi English, to Sadie Rene's on June 11, 2014, where, at approximately 9:28 p.m. he observed DirecTV sports programming playing on one television in the bar area. Mr. English further observed a waiter using a DirecTV remote control to change the channels; recorded the receiver number; noted a DirecTV channel banner displayed on the broadcast; and recorded the fire code occupancy of the building at 101-200. While in the bar, Mr. English took photos and recorded video. Images were produced along with Mr. English's affidavit in support of Plaintiff's Motion for Summary Judgment.

Defendants do not dispute what Mr. English observed, but allege that the equipment was moved with the verbal permission of a customer sales representative. According to Mr. Kuhn he suggested to a sales representative named Joel that he move his home equipment to his business for a test period to determine whether satellite service at Sadie Rene's would be disrupted by inclement weather. (Amended Answer, Doc. # 15; Affidavit of John S. Kuhn, Doc. # 24-1.) Defendants do not address the content of the service agreement cited by DirecTV as precluding any verbal amendment of the service contract.

Defendants further agree that content was broadcast at Sadie Rene's using the residential account. Mr. Kuhn explains in his affidavit, that he displayed DirecTV programing at Sadie Rene's under his residential account for twenty-four days. (Affidavit of John S. Kuhn, Doc. #24-1 ¶ 4.) Defendants do not dispute existence of the residential service contract or in any way address the contract terms cited by DirecTV that explicitly limit the use of Mr. Kuhn's service to his residence, and preclude any amendment of service terms by salespeople, or other representatives. Defendants have not introduced any record of the conversation Mr. Kuhn was alleged to have had with a sales representative of DirecTV in May of 2014. (Amended Answer, Doc. # 15, ¶ 5.) The record of account produced by DirecTV does not reflect the sales call Mr. Kuhn describes, or, any other sales call. (Motion for Summary Judgment, Doc. #21-5, Exhibit D.) According to Defendants, they received a letter from DirecTV's counsel concerning their unauthorized use of the residential account at the commercial location on July 1, 2014; only after receiving this letter did Defendants seek a commercial account from DirecTV, on or about July 11, 2014. (Amended Answer, Doc. #15, ¶¶ 4 & 8.) Within two weeks, DirecTV terminated this commercial contract.

The termination of the Sadie Rene's commercial account was the subject of Defendants' counterclaims, which were dismissed on March 30, 2016.  By way of summary, much as Defendants used a residential account for service to a commercial location, Defendants misrepresented the intended use of the commercial account when they sought service in July and purchased a less expensive commercial viewing account, which was restricted for use in premises where no food or drink was served. In support of the Motion to Dismiss, DirecTV demonstrated that the commercial viewing account was terminated pursuant to the terms of the service contract, because Sadie Rene's was a commercial establishment that sells food and alcohol for immediate consumption and was therefore in breach of the terms of service. (Motion to Dismiss, Doc. #18-3, Exhibit B.)  Defendants did not oppose the motion to dismiss or in any way dispute the information provided.

In response to DirecTV's motion for summary judgment, Defendants contend that Defendant John S. Kuhn acted "at all times herein" only in his capacity as an "officer and director of Sadie Rene, Inc." and therefore should not be held personally liable.  (Response to Motion for Summary Judgment, Doc. # 24, p. 3.)  Defendants further state that because a sales representative acquiesced to the use of the residential account, on an unspecified, open-ended, "trial basis" at the commercial location, Kuhn and Sadie Rene's are authorized users. Defendants also contend that the short-lived commercial account at Sadie Rene's constitutes "accord and satisfaction" of the dispute over the use of the residential account at the commercial premises.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law*." Estate of Smithers v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010). A fact must be essential to the outcome of a lawsuit to be 'material.' *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248 (1986). Summary judgment will be entered when a party fails to make a "showing sufficient to establish…an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23. "Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden*." Bell v. Ohio State Univ*., 351 F.3d 240, 253 (6th Cir. 2003).

Summary judgment creates a burden-shifting framework. See *Anderson*, 477 U.S. 250. The moving party has the initial burden of showing there is no genuine issue of material fact. *Plant v. Morton Int'l, Inc*., 212 F.3d 929, 934 (6th Cir. 2000). Specifically,

> "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed.R.Civ.P. 56(c)(1).

The burden then shifts to the nonmoving party to prove that there is an issue of material fact that can be tried. *Plant,* 212 F.3d at 934. If this burden is not met, the moving party is then entitled to a judgment as a matter of law. *Bell*, 351 F.3d at 253. When evaluating a motion for summary judgment, the Court construes the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The non-moving party may not simply rely on its pleadings; rather it

must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1996). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 248 (1986).

**III.  ANALYSIS**

Defendants have admitted that John S. Kuhn is the "only person or entity holding a financial interest in the commercial establishment Sadie Rene's," a bar that serves food and alcohol under liquor license located at 7200 Whipple Rd., North Canton, OH 44720. (Responses to Interrogatories, ##1; 2; 12.) Defendants further admitted that Mr. Kuhn "had a DirecTV residential account in the name of John Kuhn, account number 21437378" from which an employee of Sadie Rene's, who Mr. Kuhn had the "right and ability to supervise," exhibited DirecTV programming at the commercial establishment on June 11, 2014. (Responses to Interrogatories, ##3; 7; 9.)  These admissions demonstrate the absence of any genuine dispute over material facts concerning Mr. Kuhn's personal liability for his decision to set up and use his DirecTV receiver and broadcast content using his residential account at his business.

Defendants have admitted to moving DirecTV equipment from Mr. Kuhn's house to Sadie Rene's and broadcasting DirecTV content at Sadie Rene's from Mr. Kuhn's residential account for twenty-four days, including June 11, 2014, when DirecTV's auditor collected the images produced to verify unauthorized broadcast. (Amended Answer, Doc. # 15; Affidavit of John S. Kuhn, Doc. # 24-1.)  The service contract governing Mr. Kuhn's residential account was provided by DirecTV and is unambiguous:

> This Agreement and any lease, activation, programming, or other service commitment agreement that you entered into in connection with obtaining Service or Receiving Equipment constitute our entire agreement.  No salesperson or other representative is authorized to change it.  If any provision is declared by a

> competent authority to be invalid, that provision will be deleted or modified to the extent necessary, and the rest of the Agreement will remain enforceable. The terms of this Agreement that expressly or by their nature survive termination shall continue thereafter until fully performed.

(Motion to Dismiss, Doc. #18-2, p. 11.) Defendants have not produced any material received in discovery, or otherwise, that varies the terms of the service agreement. Mr. Kuhn's averments confirm his and the other named Defendants' breach of the service agreement. Under the terms of the agreement, the individual Mr. Kuhn describes speaking to in May had no authority to vary the terms of the agreement. Defendants do not deny receiving or having access to the terms of the agreement governing Mr. Kuhn's residential DirecTV service; they do not in any way address the service agreement.

Defendants have admitted all elements necessary to demonstrate a violation of 47 U.S.C. § 605 of the Federal Communications Act, which provides at part (a):

> no person receiving, assisting in receiving, transmitting or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport or effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communications to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Although the language of the statute itself references communication by "wire or radio," the United States Sixth Circuit Court of Appeals finds the statute applicable to satellite content service providers. *National Satellite Sports, Inc., v. Eliadis, Inc.*, 253 F.3d 900 (6th Cir. 2001). The Sixth Circuit held that 47 U.S.C. § 605 (a) operates in concert with sections 47 U.S.C. § 605 (e)(3)(A), which provides "[a]ny person aggrieved by any violation of subsection (a) of this

7

section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction" and 47 U.S.C. § 605 (d)(6), which defines "any person aggrieved" to "include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming," to extend coverage of the Act to content providers like DirecTV. *Id.* at 907. Accordingly, DirecTV has demonstrated a right to recovery under 47 U.S.C. § 605.

Plaintiff's Complaint contained three counts, the first, which has been addressed here, alleged violations of 47 U.S.C. § 605; the second alleged violations of 18 U.S.C. § 2511; and the third sought recovery for "civil conversion"; all counts address the same alleged violation by Defendants and appear to be cumulative of one another. The dispositive motions deadline has passed with Plaintiff filing a timely dispositive motion that solely addresses Count One without referencing Counts Two and Three. Plaintiff has clearly elected a single theory of recovery. Accordingly this Court will dismiss counts two and three *sua sponte* for want of prosecution.

**IV. CONCLUSION**

DirecTV's motion for summary judgment is GRANTED. Judgment is hereby entered in favor of DirecTV as to count one of the Complaint. Counts two and three are DISMISSED.

IT IS SO ORDERED.

                                               */s/ John R. Adams*
                                               JUDGE JOHN R. ADAMS
                                               UNITED STATES DISTRICT COURT

**DATED**: AUGUST 1, 2016